LESLIE S. DRESCHER vs. THE TRAVELERS INSURANCE
COMPANY.

Suffolk. March 2, 1971. — May 10, 1971.

Present: TAURO, C.J., SPALDING, SPIEGEL, REARDON, & BRAUCHER, JJ.

*Insurance,* Insured, Motor vehicle liability insurance.

Where it appeared in a suit in equity that the owner of an automobile
had specifically purchased it for his son to use while a student at a
university, that the son kept it there, that one evening the son asked
a fellow student to operate the automobile while he sat in the front
seat and conversed with an "old friend" in the back seat, and that
during such operation the automobile was involved in an accident, it
was held that the fellow student was an "insured" within a provision
of a motor vehicle liability insurance policy upon the automobile de-
fining the word "insured" as including "any . . . person using the
motor vehicle with the permission of the named insured [the owner] . . .
provided his actual operation . . . [was] within the scope of such
permission."

BILL IN EQUITY filed in the Superior Court on September
20, 1967.

The suit was heard by *Lurie,* J.

*Edward J. Barshak* for the plaintiff.

*Peter D. Cole* for the defendant.

SPIEGEL, J. This is a bill in equity for declaratory relief
in which the plaintiff seeks to enforce the liability of the
defendant under a motor vehicle liability insurance policy
issued by it to one James E. Mahoney. The trial judge en-
tered a decree in favor of the defendant, from which the
plaintiff appealed. The case is before us on a "Stipulation
Concerning the Evidence," documents and a pre-trial
deposition of Mahoney. In these circumstances, we are in
as good a position as the judge to appraise the evidence.
See *Commonwealth* v. *Wiseman,* 356 Mass. 251, 256.

On August 27, 1966, the plaintiff was operating a motor
vehicle owned by Mahoney in Amherst, Massachusetts,

when it was involved in an accident in which Mahoney's son, Thomas P., and another passenger, Alfred E. Filadoro, were both killed. The elder Mahoney specifically purchased the vehicle for Thomas to be used while he attended the University of Massachusetts as a student. Thomas kept the car with him at Amherst and had it there for several months prior to the accident. The plaintiff, who was also a student at the university, had been dating Thomas about four or five times a week for approximately two or three months prior to the accident. On the evening of the accident, during the course of a date, they met Alfred Filadoro, an "old friend" of Thomas. Thomas requested the plaintiff to drive while he sat in the front seat and conversed with his friend who was sitting in the rear. The accident occurred on that trip. An action by the administrator of the estate of Filadoro against the plaintiff was settled by payment of $25,804.25 to the administrator.

Thomas and his father never discussed whether Thomas could permit anyone else to drive the car and he was unaware that anyone other than Thomas operated it. However, he had given Thomas general permission to use the car for any purpose for which a motor vehicle is commonly used and its use had never been restricted. The elder Mahoney did not know the plaintiff.

The policy of insurance issued by the defendant to the elder Mahoney provides in pertinent part: "(a) With respect to the insurance under Coverages B and C, the unqualified word 'insured' includes (1) the named insured and . . . (2) any other person using the motor vehicle with the permission of the named insured . . . provided his actual operation or (if he is not operating) *his other actual use thereof is within the scope of such permission*" (emphasis supplied).

The sole issue before us [1] is whether the plaintiff qualifies as an "insured" within the meaning of the terms of the policy so as to be entitled to its benefits. In concluding

---

[1] In open court, the defendant waived the issue of whether proper notice was given.

that the plaintiff did not so qualify, the judge's only ruling was that this case falls within the principles of these Massachusetts decisions: *Blair* v. *Travelers Ins. Co.* 291 Mass. 432, at 436, 437. *Kneeland* v. *Bernardi*, 317 Mass. 517. *Woznicki* v. *Travelers Ins. Co.* 299 Mass. 244.

We are of opinion that the foregoing cases are clearly distinguishable and do not control the disposition of the instant one. In the *Blair* case, *supra*, the owner of an automobile lent it on a Saturday evening to one Dion for the sole purpose of enabling Dion to take it to his house that night to show it to a prospective buyer on Sunday morning. Dion had no license to operate the car and did not have permission to use the car for any purpose other than that stated. He went for a pleasure ride and allowed another individual to drive it, who also had no license, when an accident occurred. In holding that the "use" of the car at the time of the accident was not within the "permission" of the owner, the court particularly relied on the fact that the car was given to Dion for a specific purpose and stated that "[s]uch a ride was not within the express or implied purposes of the bailment, nor incidental to them, but amounted to a conversion of the automobile. [citing cases]" P. 436.

Similarly, in *Kneeland* v. *Bernardi*, *supra*, the owner of an automobile loaned it to Bernardi on a Sunday morning for the sole purpose of allowing Bernardi to go from East Boston to Lowell to seek employment. Bernardi had to return the car by 3 P.M. After going to Lowell and returning, Bernardi, by appointment, met a Miss Rowe, who was unknown to the owner. Bernadi allowed Miss Rowe, who was unlicensed, to make a practice drive around a race track and then she drove the car to Portsmouth, New Hampshire, where an accident occurred. Citing the *Blair* and *Woznicki* cases, the court held that a "practice drive by an unlicensed novice as the operator, even though Bernardi was present, was not a 'use' of the automobile by Bernardi 'with permission of the named insured' within the terms of the policy." P. 520.

The *Woznicki* case, *supra,* involved the liability of an insurance company under a policy issued pursuant to the compulsory motor vehicle insurance law where the owner had loaned his car to an unlicensed operator, one Loughlin, for the specific purpose of taking a girl friend to a particular place. Loughlin allowed one Rea to drive the car and an accident occurred. The question before the court was whether Loughlin was a "person responsible for the operation of the insured's motor vehicle with . . . [the] express or implied consent" of the owner within the provisions of G. L. c. 90, § 34A. The court held that there was no such consent.

In all of these cases, the owners loaned their cars for a specific and limited use. In addition, we note that in each case either the person to whom the car was entrusted or the subsequent operator was unlicensed, although only the *Kneeland* case appears to specifically rely on this point.

In the present case, the elder Mahoney had given his son general dominion over the car. No restrictions had been placed on its use. Being away at college, the son, in effect, was solely responsible for its operation. Since the elder Mahoney appears to have delegated such broad responsibility to his son, it is reasonable to assume that the driving of the car by the plaintiff while the son was riding in it and for his purposes was impliedly sanctioned by the father. For cases in other jurisdictions supporting this view, see *Costanzo* v. *Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.* 30 N. J. 262, 270; *Utica Mut. Ins. Co.* v. *Rollanson,* 246 F. 2d 105, 109 (4th Cir.); *Standard Acc. Ins. Co.* v. *New Amsterdam Cas. Co.* 249 F. 2d 847, 852–853 (7th Cir.); *Loffler* v. *Boston Ins. Co.* 120 Atl. 2d 691, 692–693 (Mun. Ct. of App.) (D. C.); *Fireman's Fund Indem. Co.* v. *Freeport Ins. Co.* 30 Ill. App. 2d 69, 75; *Peterson* v. *Armstrong,* 176 So. 2d 453, 455, 457 (La.); *Hardware Mut. Cas. Co.* v. *Mitnick,* 180 Md. 604, 607; *Krebsbach* v. *Miller,* 22 Wis. 2d 171, 176–177. The cases are collected in Appleman, Insurance Law and Practice, § 4361.

The decree is reversed and a new decree is to be entered

declaring that the plaintiff's operation of the motor vehicle was within the "scope" of the owner's permission, and ordering that the defendant pay to the plaintiff the sum of $25,804.25 and interest thereon from the date that the $25,804.25 was paid to the estate of Alfred Filadoro.

*So ordered.*